******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BANK OF STAMFORD ET AL. *v.* RICHARD
SCHLESINGER ET AL.
(AC 36661)

Lavine, Prescott and Mullins, Js.

*Argued March 9—officially released September 22, 2015*

(Appeal from Superior Court, judicial district of

Stamford-Norwalk, Hon. Kevin Tierney, judge trial referee [motion to dismiss]; Hon. A. William Mottolese, judge trial referee [motion for order]).

*Brenden P. Leydon*, for the appellant (named defendant).

*Anthony J. LaBella*, with whom, on the brief, was *Deborah M. Garskof*, for the appellee (Cadles of Grassy Meadows II, LLC).

*Opinion*

LAVINE, J. The issues in this appeal center on the propriety of the trial court's having corrected a clerical error in the recording of a 1995 stipulated judgment. "It is axiomatic that courts have the power and the duty to correct judgments [that] contain clerical errors . . . ." *American Trucking Assns.* v. *Frisco Transportation Co.*, 358 U.S. 133, 145, 79 S. Ct. 170, 3 L. Ed. 2d 172 (1958).

The defendant Richard Schlesinger appeals from the judgment of the trial court rendered in favor of the movant, Cadles of Grassy Meadows II, LLC (Cadles).[1] On appeal, Schlesinger claims that the trial court improperly (1) "exercise[d] jurisdiction over the nonparty's motion when the [d]efendant was clearly never properly served," (2) "effectively allowed a nonparty to file a motion in a case," (3) "failed to give preclusive effect to a valid New York decision establishing the invalidity of the improper nunc pro tunc motion," and (4) "acted sua sponte in an attempt to moot the clear jurisdictional failures of Cadles' prior actions."[2] We affirm the judgment of the trial court.

This matter has a lengthy procedural history, which could be described as a comedy of errors set in motion by a relatively innocuous clerical error two decades ago. To place this opinion in context, we are required to summarize the events that underlie this appeal. In 1988, the defendant William Weinstein borrowed money from the plaintiff, Bank of Stamford (bank); Schlesinger guaranteed the note. The defendants defaulted on the note, and the bank commenced an action against them. Subsequently, the bank was acquired by another, which failed and was taken over by the Federal Deposit Insurance Corporation (FDIC). The FDIC was substituted as the plaintiff. In 1995, the parties placed a stipulated judgment on the record before the court, *R. Tobin, J.*, but the assistant clerk failed to include the amount of the judgment when recording the judgment. The stipulated judgment was assigned several times and ultimately came into the possession of Cadles, which attempted to execute the judgment in foreign jurisdictions. Due to the clerical error in the judgment, Cadles' efforts to enforce the stipulated judgment were unsuccessful, as foreign courts mistakenly concluded that it was a default judgment. Cadles thereafter filed a number of documents and a motion for order nunc pro tunc (motion for order) in the trial court seeking to have the judgment corrected. The motion for order was granted by the court, *Hon. A. William Mottolese*, judge trial referee. Approximately two years later, Schlesinger filed a motion to dismiss seeking among other things to have the order correcting the judgment vacated. The motion to dismiss was assigned to the court, *Hon. Kevin Tierney*, judge trial referee, for adjudication.[3]

Following a hearing, Judge Tierney issued a lengthy and detailed memorandum of decision on February 28, 2014. The court found that in March, 1990, the bank commenced a collection action against Weinstein, who had defaulted on a $250,000 promissory note, which he had executed on November 1, 1988, and Schlesinger, who had guaranteed the note. Thereafter the bank became Fairfield County Trust Company, but Fairfield County Trust Company failed and was taken over by the FDIC. The FDIC was substituted as the party plaintiff on September 13, 1993. The action was called for trial on October 18, 1995. At that time, the FDIC was represented by The Pellegrino Law Firm, P.C., and the defendants were represented by the law firm of Epstein, Fogarty, Cohen and Selby.

Counsel for the parties appeared before Judge Tobin and indicated to the court that the parties had reached an agreement to be placed on the record. Attorney Bernard Pellegrino stated: "What we'd like to do is read into the record and then file a written stipulation so we have something in writing. But in effect, the agreement is that judgment shall enter in favor of the plaintiff against both defendants in the amount of $292,014.22 . . . . This is a collection on a note." The court inquired about principal and interest, and when it was to be paid. Pellegrino stated that a written stipulation would be filed, "so that would be on . . . the record." Counsel for the defendants, Carolyn Alexander Collins, stated: "That's the agreement. Yes, Your Honor."

Judge Tierney found that Judge Tobin had accepted the stipulated judgment, and that an assistant clerk completed a preprinted form labeled "JUDGMENT," which stated that "Judgment may enter in accordance with the . . . stipulation ENTERED ON THE RECORD THIS DATE, 10/18/95." The completed judgment form was attached to a half-page form entitled "CASE DISPOSITION RECORD." Judge Tierney found that the judgment form and the disposition record form identified the parties as "Bank of Stamford v. Schlesinger, Richard." Neither form indicated that the FDIC and Weinstein were parties, stated the amount of the judgment, or indicated that the case was a collection action. The assistant clerk entered the two forms into what is now Edison, the court's e-filing program, as docket entry number 128.55. The following day, the clerk's office issued a computer-generated notice that stated: "128.55 JUDGEMENT BY STIPULATION BEFORE A TRIAL, COURT OR JURY, IS COMMENCED. TOBIN, J. 10/18/95." The court found that this type of notice is customarily sent to all counsel of record.

The court also found that no further entries had been recorded on the docket of the present action until July 14, 2008—almost thirteen years later—and that a stipulation of judgment had not been filed by the parties as

they had represented to Judge Tobin. Judge Tierney, however, found in the court file a two page document entitled "Stipulation of Judgment" (stipulation), dated October 18, 1995.[4] The stipulation had not been coded as a separate pleading in the court's paper file or in the Edison computer file. The stipulation was signed by Pellegrino, but not by Alexander Collins.

On July 14, 2008, Cadles filed four documents, each representing an assignment of the stipulated judgment and collectively documenting the stipulated judgment's chain of ownership.[5] On February 15, 2011, the law firm of Ury & Moskow, LLC, filed an appearance on behalf of Cadles,[6] which the clerk's office coded for an entity other than a party of record. At that time, Cadles' counsel also filed the motion for order with a copy of the stipulation and a copy of the transcript of proceedings before Judge Tobin. The last sentence of the motion for order states that Cadles "respectfully moves that the court order that Judgment enter against all Defendants, nunc pro tunc, in conformance with the Stipulation and Transcripts, submitted herewith, as of October 18, 1995." (Emphasis omitted.) The motion for order certified service of the motion to Alexander Collins at Epstein, Fogarty, Cohen & Selby.

Judge Tierney found that on March 7, 2011, Judge Mottolese issued an order stating: "As the court is authorized to correct the terms of a judgment at any time to reflect the true facts, the judgment by stipulation heretofore entered by the court on October 18, 1995 is hereby corrected to state the amount of judgment to be $292,014.22."

On July 3, 2013, Schlesinger filed a motion to dismiss asking the court (1) to dismiss Cadles as a nonparty, (2) to vacate all actions taken by Cadles, including the stipulations it filed and the motion for order, and (3) to vacate Judge Mottolese's order regarding the motion for order. Schlessinger claimed that the motion to dismiss should be granted due to improper service of process. Counsel for Cadles and Schlesinger appeared before Judge Tierney on November 26, 2013.

As previously stated, Judge Tierney denied the motion to dismiss in a memorandum of decision issued on February 28, 2014. The court found that a stipulated judgment against the defendants had entered on October 18, 1995, in the amount of $292,014.22, pursuant to the parties' agreement on the record. The court concluded that the judgment recorded by the assistant clerk contained a clerical error, and that the court had the inherent authority to correct clerical errors and the power to enforce its judgments. The court also found that neither the twenty year statute of limitations to issue an execution on a judgment, nor the twenty-five year statute of limitations to bring an action on a judgment had run. See General Statutes § 52-598 (a). This appeal followed.

We begin by identifying the standard of review applicable to Schlesinger's claims on appeal. "A determination regarding a trial court's subject matter jurisdiction is a question of law. . . . When a trial court draws conclusions of law, appellate review is plenary, and the reviewing court must decide whether the trial court's conclusions are legally and logically correct." (Internal quotation marks omitted.) *Youngman* v. *Schiavone*, 157 Conn. App. 55, 63, 115 A.3d 516 (2015).

I

On appeal, Schlesinger first claims that the "trial court erred in exercising jurisdiction over the nonparty's motion when the [d]efendant was clearly never properly served." More specifically, Schlesinger claims that the court lacked jurisdiction because Cadles did not serve him with the motion for order pursuant to General Statutes § 52-350e.[7] We disagree.

The following facts are relevant to this claim. In February, 2011, Cadles filed a motion for order asking the court to correct the clerical error in the recording of the stipulated judgment. Cadles sent a copy of the motion for order to Schlesinger's counsel of record as of October 18, 1995, but did not have a proper officer serve the motion for order on Schlesinger. The motion for order appeared on the nonarguable short calendar, and on February 16, 2011, Judge Mottolese issued the following order: "As the court is authorized to correct the terms of a judgment at any time to reflect the true facts, the judgment by stipulation heretofore entered by the court on October 18, 1995 is hereby corrected to state the amount of judgment to be $292,014.22."

In July, 2013, Schlesinger filed a motion to dismiss asking, in part, that the court vacate any action taken on the motion for order because he had not been served pursuant to § 52-350e. Thereafter Cadles and Schlesinger appeared before Judge Tierney on November 26, 2013. In his memorandum of decision, Judge Tierney found that the present case concerns a clerical error, not a substantive error, and that Judge Mottolese had the authority to correct the judgment sua sponte, upon motion by either party properly authorized by statutes, or by the clerk's notification. In other words, the manner in which a clerical error is brought to the attention of the court is of no consequence. Moreover, Judge Tierney concluded that Judge Mottolese issued his order pursuant to the court's inherent authority to correct a clerical error in a judgment.

Judge Tierney nonetheless acknowledged that Schlesinger did not have notice of the clerical error before Judge Mottolese issued his order of March 7, 2011, and was therefore unable to object. See General Statutes § 52-350c. Judge Tierney found, however, that Schlesinger had notice of the error at the time that Cadles and Schlesinger appeared before him. The court again

noted its inherent power to correct the clerical error in the judgment on the basis of three facts. The court found that the judgment (1) entered in favor of the FDIC, (2) against the defendants, (3) in the amount of $292,014.22 on October 18, 1995.[8] Judge Tierney concluded that because he had made the requisite findings to correct the judgment, Schlesinger's challenge to Judge Mottolese's March 7, 2011, order was moot.

Although Schlesinger has cast his claims in terms of the court's jurisdiction, what he really is challenging is the court's authority to act, or the manner in which it acted. There is a "distinction between a trial court's jurisdiction and its authority to act under a particular statute." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727, 724 A.2d 1084 (1999). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Citations omitted; internal quotation marks omitted.) Id., 727–28.

It is well established that, in determining whether a court has subject matter jurisdiction, "every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 421 n.3, 426 A.2d 1324 (1980).

The essence of Schlesinger's claim is that he was entitled to notice before Judge Mottolese ordered the clerical record corrected to reflect the amount of the stipulated judgment. Judge Tierney found that Judge Mottolese had the inherent authority to correct the judgment without service on Schlessinger. We agree with Judge Tierney.

It is within the equitable powers of the trial court "to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 670, 594 A.2d 958 (1991); see *Blake* v. *Blake*, 211 Conn. 485, 494, 560 A.2d 396 (1989) (at common law clerical errors in judgments may be corrected any time). "Courts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judgment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Gong* v. *Huang*, 129 Conn. App. 141, 154, 21 A.3d 474, cert. denied, 302 Conn. 907, 23 A.3d 1247 (2011).

"A trial court possesses the power to modify substantively its own judgment within four months succeeding the date on which it was rendered or passed. . . . A court may correct a clerical error at any time, even after the expiration of the four month period. . . . It is axiomatic that a judgment should admit of a consistent construction as a whole. . . . A clerical error does not challenge the court's ability to reach the conclusion that it did reach, but involves the failure to preserve or correctly represent in the record the actual decision of the court." (Citations omitted; internal quotation marks omitted.) *Jordan* v. *Jordan*, 125 Conn. App. 207, 211, 6 A.3d 1206 (2010), cert. denied, 300 Conn. 919, 14 A.3d 333 (2011). "In other words, it is clerical error if the judgment as recorded fails to agree with the judgment in fact rendered . . . . Thus, a motion to correct properly is granted when the moving party demonstrates that the recorded judgment is inconsistent with the actual judgment. . . . A finding of an inconsistency between the recorded judgment and the actual judgment necessarily requires that the actual judgment be unambiguous and clearly ascertainable." (Citations omitted; internal quotation marks omitted.) *Connecticut National Bank* v. *Gager*, 263 Conn. 321, 326, 820 A.2d 1004 (2003).

In the present matter, the trial court record failed to include the amount of the judgment and to identify the parties. For the foregoing reasons, we conclude that, as a matter of equity, the trial court had authority to correct the clerical error in the recorded judgment even if the motion for order was not served on Schlesinger. Therefore, Schlesinger's first claim fails.

II

Schlesinger's second claim is that the court improperly permitted a nonparty to file a motion in the underlying action. He contends as well that Cadles had no right to file the assignments, stipulation, transcript, and motion for order as it was not a party to the action. We disagree.

Judge Tierney found that Judge Mottolese acted pursuant to the court's inherent authority to correct the clerical error in the court record, and concluded: "The language used by Judge Mottolese in his March 7, 2011 order indicates that his decision was based on the court's inherent authority to correct a clerical error in a judgment entered by a judge now deceased." Schlesinger's second claim, therefore, fails.[9]

III

Schlesinger's third claim is that the court failed to give preclusive effect to a New York judgment. We need not decide the claim as it is moot.

Judge Tierney made the following findings of fact. Cadles filed actions against Schlesinger in Florida and

New York in an effort to enforce the stipulated judgment, nunc pro tunc. The foreign courts rejected Cadles' efforts on the basis of its failure to comply with the procedural rules of the respective foreign jurisdiction. Judge Tierney concluded that neither decision was binding upon the court.

On appeal, Schlesinger claims that the parties litigated the "putative 1995 judgment" in New York. See *Cadles of Grassy Meadows II, LLC* v. *Schlesinger*, N.Y. Sup. Ct., Nassau County, Index No. 10097-2011 (November 15, 2013) (McCormack, J.).[10] The Supreme Court of New York determined that the judgment was never entered and that Cadles "defaulted" in entering a judgment in a timely manner or "abandoned" the proceeding for fifteen years. The New York court ruled that Cadles had attempted to short circuit the process as if a valid judgment had entered in 1995. Schlesinger claims that this New York judgment is binding on Cadles under the doctrine of collateral estoppel and that Judge Tierney was bound to afford it full faith and credit.

In its brief on appeal, Cadles has represented that, by order entered on June 20, 2014, the New York court vacated its November 15, 2013 order and found the subject judgment to be enforceable by Cadles in New York.[11] See *Cadles of Grassy Meadows II, LLC* v. *Schlesinger*, N.Y. Sup. Ct., Nassau County, Index No. 10097-2011 (June 20, 2014) (McCormack, J.). Furthermore, by order dated October 9, 2014, the New York court denied Schlesinger's motions to vacate, expunge and reargue the June 20, 2014 judgment. See *Cadles of Grassy Meadows II, LLC* v. *Schlesinger*, N.Y. Sup. Ct., Nassau County, Index No. 10097-2011 (October 9, 2014) (McCormack, J.). Cadles included stamped copies of the June 20, 2014 and October 9, 2014 decisions of the New York Supreme Court in the appendix to its brief.

"[T]he reports of judicial decisions of other states and countries may be judicially noticed by the courts of this state as evidence of the common law of such states or countries and of the judicial construction of the statutes or other laws thereof." (Internal quotation marks omitted.) *Pagliaro* v. *Jones*, 75 Conn. App. 625, 634, 817 A.2d 756 (2003). "Matter which it is claimed the court should judicially notice should be called to its attention by the party seeking to take advantage of the matter so that, if there is ground upon which it may be contradicted or explained, the adverse party will be afforded an opportunity to do so." (Internal quotation marks omitted.) *Wood* v. *Wood*, 165 Conn. 777, 780–81, 345 A.2d 5 (1974).

Although Schlesinger filed his initial brief on October 3, 2014—more than twenty-five years after he guaranteed Weinstein's loan from the bank— he did not mention the New York court's June 20, 2014 decision reversing its November 15, 2013 judgment. He did address the issue in his reply brief, however, arguing

that Judge Tierney was constrained by the state of the record at the time he issued his ruling on February 28, 2014. During oral argument before us, Schlesinger's counsel represented that the New York decisions are on appeal, apparently having forgotten the position he took in his "notice of filing supplemental authority in support of motion to dismiss" before Judge Tierney, i.e., "a pending appeal does not preclude the application of the . . . doctrine of collateral estoppel." *LaBow* v. *Rubin*, 95 Conn. App. 454, 467, 897 A.2d 136, cert. denied, 280 Conn. 933, 909 A.2d 960 (2006). Moreover, the New York court denied Schlesinger's motion to stay the New York judgment for failure to post a security bond.

In the present case, we have taken judicial notice of the three decisions of the New York court and conclude that Schlesinger's claim is moot. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction. . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable . . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy [is] capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . A case is considered moot if [the] court cannot grant the appellant any practical relief through its disposition of the merits . . . . Because mootness implicates this court's subject matter jurisdiction, it raises a question of law over which we exercise plenary review." (Internal quotation marks omitted.) *Wyatt Energy, Inc.* v. *Motiva Enterprises, LLC*, 308 Conn. 719, 736, 66 A.3d 848 (2013).

On the basis of our review of the New York litigation, we conclude that Schlesinger's claim regarding the preclusive effect of that litigation is no longer justiciable because the resolution of the litigation in Cadles' favor has resolved the controversy. We, therefore, dismiss Schlesinger's claim as moot.

IV

Schlesinger's final claim is that the court improperly acted sua sponte in an attempt to render moot the clear jurisdictional failures of Cadles' prior actions. We disagree.

Judge Tierney found that Judge Mottolese granted the motion for order on March 7, 2011, and quoted the language of the order: "As the court is authorized to correct the terms of a judgment at any time to reflect the true facts, the judgment by stipulation heretofore entered by the court on October 18, 1995 is hereby

corrected to state the amount of judgment to be $292,014.22." As we previously have stated in this opinion, "[i]t is axiomatic that courts have the power and *the duty* to correct judgments which contain clerical errors . . . ." (Emphasis added; internal quotation marks omitted.) *Lamont* v. *New Hartford*, 4 Conn. App. 303, 306, 493 A.2d 298 (1985), quoting *American Trucking Assns.* v. *Frisco Transportation Co.*, supra, 358 U.S. 145.

When Judge Mottolese determined that the recorded judgment did not conform to the stipulated judgment accepted by Judge Tobin on October 18, 1995, it was his duty and responsibility to order the clerical error corrected. In adjudicating Schlesinger's motion to dismiss, Judge Tierney made the necessary factual findings to determine that the parties had entered a stipulated judgment on the record and that the stipulation recorded was consistent with the language used by the parties in court on October 18, 1995.[12] Both Judge Mottolese and Judge Tierney acted within their authority and power to correct the judgment. Schlesinger's claim ascribing an improper motive to the trial court is entirely without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] William Weinstein also was a defendant at trial, but he has not participated in this appeal. We refer to the defendants individually by name and collectively as the defendants.

Cadles was not a party to the underlying action. It is the assignee of the stipulated judgment rendered in favor of the Federal Deposit Insurance Company, the successor in interest to the plaintiff, Bank of Stamford. Cadles filed an appellee's brief in response to the brief filed by Schlesinger on appeal, and both parties appeared and argued before us. Thereafter, we sua sponte ordered Cadles to file a motion to be made party to this appeal. We subsequently granted the motion without objection.

[2] Although Schlesinger filed an appeal from the "final judgment denying motion to dismiss," in his statement of the issues on appeal and in his brief, Schlesinger appears to challenge the judgment granting the motion for order nunc pro tunc. Schlesinger never appealed from the court's order that the underlying stipulated judgment be corrected.

[3] Judge Tobin passed away between the time he accepted the stipulated judgment and Cadles' filing the motion for order.

[4] The stipulation stated in part: "The parties stipulated on the record that judgment may enter in favor of the Plaintiff, Federal Deposit Insurance Corporation as Receiver for Fairfield County Trust Company against the Defendants, Richard Schlesinger and William Weinstein, jointly and severally, in the amount of $292,014.22. . . . The date of judgment shall be October 18, 1995."

[5] According to the documents the stipulated judgment was assigned as follows: on June 20, 2008, the FDIC assigned its interest in the stipulated judgment to JDC Finance Company III, L.P.; on July 7, 2008, the JDC Finance Company III, L.P., assigned its interest in the judgment to Value Recovery Group, Inc.; on July 9, 2008, Value Recovery Group, Inc., assigned its interest in the stipulated judgment to The Cadle Company; on July 9, 2008, The Cadle Company assigned its interest in the stipulated judgment to Cadles.

[6] The form stated the appearance was on behalf of "Plaintiff; Cadles of Grassy Meadows II, LLC successor in interest to FDIC Receiver for Bank of Stamford."

[7] General Statutes § 52-350e (a) provides in relevant part: "Unless otherwise provided by . . . service of process containing a postjudgment procedure, or concerning a determination of interest in property . . . may be made (1) by a proper officer sending a true and attested copy thereof by certified mail, return receipt requested, to a person at his last-known address

. . . or (3) as provided by rule of court for service on an appearing party if made on a party who has filed a postjudgment appearance or if made within one hundred eighty days of rendition of judgment on a party who has appeared in the action.''

[8] On appeal, Schlesinger does not challenge the three facts found by Judge Tierney.

[9] Schlesinger also has argued that before Cadles could file documents and motions, it was required to be substituted as a party plaintiff. This argument fails because judgment entered on October 18, 1995, and no action was pending at the time it filed the subject documents.

As a general matter, ''substitution is permitted where an action was commenced in the name of the wrong person . . . in cases of misjoinder and nonjoinder . . . and in cases of assignment. . . . In each situation, the statute or rule envisions substitution while the action is *pending*. . . . (substitution allowed [w]hen any action has been commenced in the name of the wrong person) . . . (substitution permissible [i]f, *pending* the action, the plaintiff assigns the cause of action). Where judgment has been rendered, however, substitution is unavailable unless the judgment is opened.'' (Citations omitted; emphasis added; internal quotation marks omitted.) *Joblin* v. *LaBow*, 33 Conn. App. 365, 367, 635 A.2d 874 (1993), cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994).

Moreover, any attempt by Cadles to open the judgment likely would not have been successful. Pursuant to General Statutes § 52-212a, no motion to open may be filed except within four months of a judgment's being rendered, unless certain exceptions apply. None of the exceptions appear to be present here and more than a decade had passed between the time judgment was rendered and when Cadles asked the court to correct a clerical error.

[10] The New York court granted the defendants' motion for order vacating the nunc pro tunc judgment filed with the Nassau County Clerk's office on July 8, 2011. According to the New York court, ''[t]he nunc pro tunc judgment was based on a default in appearance and entered in violation of [certain rules and laws of civil procedure].'' (Emphasis omitted.)

[11] The New York court stated that ''it has now been established that the Connecticut Court's 1995 judgment was not entered into on default, this court finds the judgment is entitled to full faith and credit . . . . This court's November 15, 2013 decision and order is thereby vacated.''

[12] Although it was not necessary to do so to correct the clerical error, Judge Tierney stated that trial courts have the authority to enforce stipulated judgments pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811–12, 626 A.2d 729 (1993) (*Audubon*). On appeal, Schlesinger argues that no *Audubon* motion had been filed and that it was improper for the court to sua sponte enforce the stipulated judgment pursuant to *Audubon*. We need not address this argument as we have concluded that both Judge Mottolese and Judge Tierney properly exercised the court's inherent equitable authority to correct the clerical error in the judgment.